IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
WAYNE R. KREBS,                    )    Civil No. 06-1795-JE
                                   )
            Plaintiff,             )
                                   )    FINDINGS AND
       v.                          )    RECOMMENDATION
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
_____)
```

    Rory Linerud
    P.O. Box 1105
    Salem, OR 97308
        Attorney for Plaintiff

    Karin J. Immergut
    U.S. Attorney
    Britannia I. Hobbs
    Asst. U.S. Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR 97204-2902

    David M. Blume
    Special Asst. U.S. Attorney
    Office of General Counsel
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA 98104-7075
        Attorneys for Defendant

FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Plaintiff Wayne Krebs brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Insurance Benefits. The Commissioner's decision should be reversed and the action should be remanded for further proceedings at step five of the disability determination process.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on September 16, 2003, alleging that he had been disabled since May 31, 2002, because of a low-back injury. After his application for benefits had been denied initially and upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ William Stewart, Jr. on December 12, 2005. Plaintiff, who was represented by counsel, and C. Kay Wise, a vocational expert (VE), testified at the hearing.

In a decision filed on August 22, 2006, the ALJ issued a decision finding that plaintiff could work as a small-products assembler, park aide, or hand packer, and accordingly was not disabled within the meaning of the Social Security Act (the Act).

On October 17, 2006, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. In the present action, plaintiff seeks review of that decision.

FINDINGS AND RECOMMENDATION - 2

**FACTUAL BACKGROUND**

Plaintiff was born in 1954.  He was 48 years old at the time of the alleged onset of his disability, and was 52 years old when the ALJ issued the decision denying his application for benefits.

Plaintiff attended school for 12 years, but did not earn a high school diploma or obtain a GED.  He has past work experience as a forklift driver and as a mill laborer, general laborer, glue-line worker, gas station attendant, and newspaper deliverer.

Plaintiff last worked regularly in early 2003, and worked sporadically until November, 2005.  The ALJ concluded that plaintiff had performed substantial gainful activity between the alleged onset of his disability on May 31, 2002, and August, 2003.  Plaintiff has not challenged that conclusion in this action.  Accordingly, the question before the court is whether the ALJ correctly concluded that plaintiff was not disabled after that date.

**DISABILITY ANALYSIS**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>Step One</u>.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

FINDINGS AND RECOMMENDATION - 3

<u>Step Two</u>.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

<u>Step Four</u>.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

<u>Step Five</u>.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P,

FINDINGS AND RECOMMENDATION - 4

Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### MEDICAL RECORD

Plaintiff has a history of low back pain. On November 24, 2001, and May 31, 2002, he sought emergency care for sudden onset of acute right flank pain. The first episode was caused by a kidney stone, and the cause of the second episode was not determined. On both occasions, plaintiff was discharged after his pain resolved.

Plaintiff was treated for acute right lumbosacral iliac strain on June 19, 2002. Hospital records of that treatment indicate that plaintiff's physician had ordered an MRI earlier that showed multi level degenerative changes in plaintiff's spine. The MRI showed significant disc degenerative disease at L3-4 and L4-5, and some foraminal compromise. Two days of bed rest was ordered, after which plaintiff was released to work under restrictions limiting him to lifting no more than 10 pounds, minimizing his twisting and bending, and requiring that he be allowed to change positions frequently.

Plaintiff subsequently attended a work-conditioning program and underwent physical therapy. Some records indicated that

FINDINGS AND RECOMMENDATION - 5

plaintiff could lift as much as 40 to 50 pounds, with limitations on stooping, twisting, climbing, crouching, pushing and pulling. Other records indicate that plaintiff was limited to sedentary to light work, with lifting limited to 30 pounds, and postural and twisting restrictions.

Plaintiff was seen for complaints of low back pain during July and August, 2002. He was referred to Dr. Scot Kitchel, an orthopedic specialist. Following an examination on September 26, 2002, Dr. Kitchel diagnosed lumbar strain, lumbar degenerative disc disease, and lumbar radiculitis, and suggested that plaintiff receive an epidural injection. Plaintiff was released to modified duty work.

Plaintiff underwent a lumbar laminectomy from L2-3-4-5-S1, and fusion with instrumentation from L3 to the sacrum, on August 20, 2003. Plaintiff's functioning improved following surgery, and on October 9, 2003, Dr. Kitchel released plaintiff to full-time work, with instructions that he avoid bending, twisting, stooping, and lifting more than 30 pounds.

In October, 2003, and January, 2004, State Disability Determination Service (DDS) doctors reviewed plaintiff's records, and determined that plaintiff could perform light work with some climbing and stooping restrictions.

**HEARING TESTIMONY**

At the hearing before the ALJ, plaintiff testified that he has lower back pain, fatigue, emotional stress, pain from his low back area into his right leg which is aggravated by sitting, standing or

FINDINGS AND RECOMMENDATION - 6

bending, depression with deficiencies in understanding, and diminished strength in his left hand, which he had started to experience during the "month or so" preceding the hearing.

The ALJ posed a hypothetical describing a 51-year-old individual with 12 years of education who could not lift or carry more than 10 pounds frequently, with an occasional 30 pound maximum, was limited to occasional ladder climbing and scaffold use or stooping, needed an occasional opportunity to change position, could walk a half hour at a time, and could walk up to 4 hours during an 8-hour work day. The VE testified that an individual with these limitations could not perform plaintiff's past relevant work, but could work as a small products assembler, park aide, and hand packager. When limitations of lifting 10 to 13 pounds occasionally, only occasionally squatting or kneeling, and rarely bending at the waist, twisting at the waist, stair climbing, or ladder climbing were added, the VE testified that the individual could perform no work that was classified as "light." She also testified that plaintiff had no skills that were transferable to sedentary work.

### ALJ'S DECISION

At step one, the ALJ found that plaintiff had performed substantial gainful activity from the date of the alleged onset of disability on May 31, 2002, until August 20, 2003. He found that, after that date, plaintiff worked occasionally, but did not perform substantial gainful activity.

At step two, the ALJ found that plaintiff's multi-level lumbar degenerative disc disease, status-post l-3 sacrum fusion, was a

FINDINGS AND RECOMMENDATION - 7

severe impairment. He found that plaintiff's alleged mental impairments were not severe. The ALJ noted that plaintiff had a record of "minor depressive" symptoms, and that he was given the opportunity for a few counseling sessions, but that "the longitudinal record does not show any chronic psychiatric problems." He further found that, though other symptoms "appear in the record from time to time . . . they were no more than transient or did not cause significant limitations."

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal the requirements set out in the "listings," 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ found that after October 1, 2003, plaintiff retained the functional capacity to lift and carry 30 pounds occasionally and to lift and carry 10 pounds frequently; to walk one-half hour at a time; to sit 6 hours in an 8-hour workday; and stand/walk 4 hours in that workday. He further found that plaintiff could occasionally stoop and climb ladders and scaffolds, and that he needed an opportunity to occasionally change positions.

In reaching these conclusions about plaintiff's residual functional capacity, the ALJ found that plaintiff's testimony concerning his impairments and limitations was not entirely credible.

At step 4 the ALJ found that plaintiff could not perform his past relevant work.

At step 5, the ALJ found that, after October 1, 2003, plaintiff could work as a small products assembler, a park aide, and

FINDINGS AND RECOMMENDATION - 8

as a hand packager. Accordingly, he found that plaintiff was not disabled within the meaning of the Act.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

FINDINGS AND RECOMMENDATION - 9

**DISCUSSION**

Plaintiff contends that the ALJ erred by relying on erroneous vocational testimony, inadequately developing the record concerning plaintiff's alleged mental impairments, and improperly rejecting plaintiff's testimony concerning his mental impairments.

I agree with the first of these contentions, and disagree with the latter two.

1. <u>Vocational Testimony</u>

As noted above, the ALJ found that, though plaintiff could not perform his past relevant work, he could work as a park aide, a hand packager, or a small-products assembler.

Plaintiff contends that the ALJ erred in relying on erroneous testimony by the VE concerning the demands of these positions.

The Commissioner correctly concedes that the VE's "testimony regarding the park aide and hand packager jobs deviated without explanation from the relevant job descriptions in the United States Department of Labor's *Dictionary of Occupational titles* (DOT)," and accepts plaintiff's contention that "substantial evidence does not exist to support a finding that he could make a vocational adjustment to work" in those positions. The Commissioner also concedes that the VE's testimony concerning the physical requirements of the small-products assembler position was inconsistent with the requirements for that position described in the DOT, and acknowledges that the VE testified that the position required a lesser ability to stand than is imposed under the DOT. The Commissioner contends, however, that the ALJ's conclusion that

FINDINGS AND RECOMMENDATION - 10

plaintiff could work as a small-products assembler was supported by substantial evidence because the ALJ could rely on the VE's testimony concerning the exertional requirements of that position.

The record before the court does not support the Commissioner's position on this issue. DOT job descriptions and classifications are presumed to be correct. E.g., Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); see also, SSR 00-4p, 2000 WL 1898704 at *2 (agency relies primarily on DOT for information about work requirements). That presumption of correctness is rebuttable, id., citing Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994), and the Commissioner may consider information obtained from vocational experts that conflicts with the DOT. Id., citing Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (8th Cir. 1991); SSR 00-4p, 2000 WL 1898704 at *2 (evidence from VE should be consistent with information in DOT: differences must be explained by VE). If an "apparent unresolved conflict" exists between information provided by the DOT and the VE, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704 at *2. An ALJ has an "affirmative responsibility" to inquire about conflicts between evidence provided by the DOT and by a VE, must "obtain a reasonable explanation for the apparent conflict," must resolve the conflict before relying on the VE's evidence to support a determination that the claimant is not disabled, and "must explain the resolution of the conflict irrespective of how the conflict was identified." Id. at *4; see also Johnson, 60 F.3d at 1435 (ALJ

FINDINGS AND RECOMMENDATION - 11

could rely on VE's testimony that job classified in DOT as "light" could be performed by claimant limited to "sedentary" work where VE "testified specifically" about characteristics of job as performed in relevant local market). An ALJ may rely on VE testimony that contradicts the DOT "only insofar as the record contains persuasive evidence to support the deviation." Johnson, 60 F.3d at 1435.

Here, the ALJ asked the VE to consider hypotheticals describing an individual who was limited to standing 6 hours during a workday, and an individual who was limited to standing 4 hours in a workday. The VE testified that a small-products assembler position was consistent with the 6-hour standing limit, and that position is described by the DOT as being performed at the "light" exertional level. "Light" exertional level work requires the ability to stand for up to 6 hours during a workday. See SSR 83-10, 1983 WL 31251.

The VE also testified that the small-products assembler position would be appropriate for an individual who could stand only 4 hours during a workday, the standing limitation that the ALJ ultimately concluded was appropriate for plaintiff. However, here, contrary to the agency's Rule set out in SSR 00-4p, the VE provided no explanation for the difference between testimony that the small-parts assembler position could be performed by an individual limited to standing 4 hours during a workday and the DOT's characterization of that position as light, which requires the ability to stand 6 hours a day. Further, there is no other evidence in the record explaining that contradiction, and the ALJ did not discuss the

FINDINGS AND RECOMMENDATION - 12

conflict, resolve the conflict, or explain how the conflict was resolved.

In the absence of a satisfactory examination, explanation, and resolution of the apparent conflict between the 6 hour standing requirement imposed under the DOT and the VE's testimony that the small-products assembler position required only 4 hours of standing, the ALJ's conclusion that plaintiff was not disabled because he could perform that job is not supported by substantial evidence in the record. As noted above, the Commissioner concedes that substantial evidence does not support the conclusion that plaintiff could perform the other two positions identified by the ALJ because the VE erred in identifying the requirements of those positions. Indeed, even if the VE had provided some explanation concerning the difference between the exertional requirements of the small-products assembler position set out in the DOT and the lesser requirements to which she testified, any confidence in that explanation might well be undermined by the serious errors in the other aspects of her testimony.

In the absence of substantial evidence supporting the ALJ's conclusion that plaintiff could perform jobs that exist in substantial numbers in the national economy, this action must be remanded for further proceedings at step five of the disability analysis process, including the taking of additional VE testimony. Though remand is obviously required for this purpose, I will also address plaintiff's other arguments in order to clarify the issues that should be addressed on remand.

FINDINGS AND RECOMMENDATION - 13

2. <u>Development of the Record</u>

    Plaintiff contends that the ALJ failed to fully develop the record concerning his mental impairments, erred in failing to consider his mental impairments when evaluating his ability to work, and erred in failing to request a psychological examination or ask a DDS physician to review the file and render an opinion as to his mental status. In the absence of such examination or review, plaintiff contends that the ALJ had "no basis to understand the extend of Plaintiff's mental impairment in order to evaluate how the mental impairment affected Mr. Krebs' ability to work."

    An ALJ "has a duty to assist in developing the record." <u>Armstrong v. Commissioner</u>, 160 F.3d 587, 589 (9th Cir. 1998).; 20 C.F.R. §§ 404.1512(d)-(f). In addition, an ALJ has a duty to further develop the record when the evidence is ambiguous or is inadequate to allow for proper evaluation of the evidence. <u>E.g.</u>, <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1068-69 (9th Cir. 2006); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). An ALJ generally has broad discretion in determining when a consultative examination is required, <u>Reed v. Massanari</u>, 270 F.3d 838, 842 (9th Cir. 2001), and such an examination is necessary only if the evidence as a whole is not sufficient to support a decision on a claim of disability. 20 C.F.R. § 404.1519a(b).

    The record here does not support plaintiff's contentions that more evidence was needed to properly evaluate his mental impairments, and that the ALJ erred in failing to consider his mental impairments in evaluating his residual functional capacity. As the Commissioner notes, plaintiff did not allege any mental

FINDINGS AND RECOMMENDATION - 14

impairments when he applied for benefits, and exhibited no difficulties with "understanding, coherency, concentrating, talking or answering questions" in a disability interview conducted on September 16, 2003, some four months after the alleged onset of his disability.  The Commissioner also accurately notes that plaintiff's sister, who submitted a Function Report on his behalf, reported that plaintiff's alleged impairments did not affect his ability to pay attention, complete tasks, concentrate, understand, follow instructions, or get along with others, and that other reference in the record to plaintiff's mental symptoms are "only fleeting."

During the hearing before the ALJ, plaintiff testified about his alleged mental impairment in non-specific terms, asserting that he experienced fatigue, stress, and depressive symptoms.  His testimony about the effect of the alleged symptoms on his daily activities was vague and somewhat inconclusive: In response to questioning by his counsel, plaintiff asserted only that his depression "probably would" affect him "working somewhere . . . ." In addition, almost all of the limited evidence of plaintiff's mental impairments came from plaintiff's own testimony.  As noted below, the ALJ discredited that testimony, and provided a sufficient basis for his conclusion that plaintiff was not wholly credible.

Under these circumstances, the ALJ's decision not to include any mental impairments among plaintiff's "severe" impairments was supported by substantial evidence in the medical record, and the ALJ was not required to further develop the record as to plaintiff's mental condition by referring plaintiff for a psychological

FINDINGS AND RECOMMENDATION - 15

examination or asking a DDS physician to review the record concerning plaintiff's mental condition.

### 3. ALJ's Credibility Determination

In assessing plaintiff's limitations and capabilities, the ALJ found that "claimant's statements concerning his impairments and limitations are not entirely credible in light of information contained in the medical reports and elsewhere in the record. Plaintiff contends that this action should be remanded because, in addition to the issues discussed above, the ALJ provided no reasons for rejecting his testimony concerning his depression and emotional distress. Plaintiff asserts that "these problems would affect his ability to perform or maintain work."

An ALJ is responsible for determining credibility. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because it is unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990) (*en banc*). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

In evaluating a claimant's credibility, the ALJ may consider: (1) ordinary methods of credibility evaluation, including the claimant's reputation for veracity, prior inconsistent statements

FINDINGS AND RECOMMENDATION - 16

concerning symptoms, and other testimony by the claimant that reflects upon the claimant's credibility; (2) unexplained or inadequately explained failure to seek treatment or follow a course of treatment prescribed; (3) the claimant's daily activities; (4) objective medical evidence; (5) opinions from medical sources; (6) the location, duration, frequency, and intensity of symptoms; (7) precipitating and aggravating factors; (8) the type, dosage, effectiveness, and side effects of medications; (9) treatment other than medication; and (10) statements from the claimant and others regarding the claimant's symptoms and limitations.  20 C.F.R. § 404.1529(c); Smolen v. Chater, 80 F.3d 1273, 1284-85 (9th Cir. 1996).

Plaintiff's challenge to the ALJ's credibility finding asserts both that the ALJ failure to find that plaintiff had mental impairments that were "severe," and the ALJ's conclusion that plaintiff's testimony concerning his testimony concerning his depression and emotional distress.

Based upon a careful review of the medical record and the ALJ's decision, I conclude that the ALJ did not err in omitting plaintiff's alleged mental symptoms from his evaluation of plaintiff's residual functional capacity.  Other than a recommendation by Dr. Campbell, a psychologist, in December, 2002, that plaintiff receive 4 sessions of "psychological counseling," the medical record does not include information from an acceptable medical source indicating that plaintiff had any medically established mental impairment.  The same document noting the

FINDINGS AND RECOMMENDATION - 17

recommendation for limited counseling also indicated that testing disclosed "no indication of unusual ideation or thinking."

Under these circumstances, substantial evidence in the record supported the ALJ's conclusion that he was not required to evaluate plaintiff's alleged mental symptoms in assessing plaintiff's impairments and residual functional capacity.  Nevertheless, in his decision, the ALJ provided adequate support for his conclusion that plaintiff's testimony concerning his symptoms and impairments was not wholly credible.  The ALJ noted that plaintiff indicated that he had lost his most recent job during a "general lay-off," which was inconsistent with "the inability to work."  In supporting his credibility finding, the ALJ also cited plaintiff's January, 2004 report to his rehabilitation counselor that he had just started receiving unemployment benefits.  The ALJ noted that, in order to qualify for unemployment benefits, "applicants must typically affirm that they are capable of working," and observed that plaintiff "apparently claimed an ability to work when applying for one form of government benefits, while currently alleging an inability to work during the same period of time."  These are clear and convincing reasons for concluding that plaintiff's testimony was not wholly credible.

## CONCLUSION

A judgment should be entered reversing the Commissioner's decision, and remanding this action for further proceedings at step five of the disability analysis process.

FINDINGS AND RECOMMENDATION - 18

**SCHEDULING ORDER**

    The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due March 7, 2008.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

    A party may respond to another party's objections within 10 days after service of a copy of the objection.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

    DATED this 19th day of February, 2008.

                                       /s/  John Jelderks
                                       John Jelderks
                                       U.S. Magistrate Judge